UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**Lynn Wright-Porter,**

       **Plaintiff,**         **Civil Action No. 11-10837**

      vs.                 **District Judge Bernard A. Friedman**

**Michael J. Astrue,**         **Magistrate Judge Mona K. Majzoub**
**Commissioner of**
**Social Security,**

       **Defendant.**
_____/

### Report and Recommendation

Plaintiff Lynn Wright-Porter seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security benefits due to her impairments–depression/mental disorder, scoliosis, degenerative disc disease, and accompanying pain. (Dkt. 1.) 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c). Before the Court are the parties' motions for summary judgment. (Dkt. 9, 10.) Plaintiff did not respond to Defendant's motion.

The Court has been referred these motions for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 3.) The Court has reviewed the pleadings, dispenses with a hearing, and is now ready to issue its report and recommendation.[1]

**I.    Recommendation**

Because the ALJ appropriately addressed the treating source's opinion and did not need to discuss Plaintiff's husband's statement, which mirrored Plaintiff's own testimony, and substantial

---

[1] E.D. Mich. LR 7.1(f)(2).

1

evidence supports the decision denying Plaintiff her disability benefits, the Court recommends denying Plaintiff's motion for summary judgment, granting Defendant's motion for summary judgment, and dismissing this case.

## II.     Report

### A.     Facts

#### 1.     Procedural facts

On June 8, 2006 Plaintiff filed for disability and disability insurance benefits, alleging disability beginning on June 17, 2004.  (AR at 19.)  Defendant denied her claim and Plaintiff thereafter filed a required for hearing.  (*Id.*)  On November 20, 2008 Plaintiff appeared at and testified at her hearing.  (*Id.*)  On January 15, 2009 the ALJ issued his written decision denying Plaintiff benefits.  (*Id*. at 27.)  Plaintiff sought review of that decision, which the Appeals Council denied on December 16, 2010.  (*Id*. at 1.)  Plaintiff then filed this case, seeking judicial review of the Appeals Council's final decision.  (Dkt. 1.)

#### 2.     Medical evidence

The majority of the evidence relates to Plaintiff's allegations and diagnoses of back pain. Plaintiff herself focused her testimony at the hearing on this physical impairment.  The Court therefore reviews this evidence and only briefly discusses the ALJ's analysis of Plaintiff's mental impairment.

On July 29, 2006 Dr. R. Matta, M.D., examined Plaintiff.  (AR at 186.)  Dr. Matta reported that Plaintiff complained of neck pain since 2003.  (*Id*.)  Dr. Matta noted that Plaintiff stated that the pain was intermittent and occurred several days a month.  (*Id.*)  Dr. Matta performed a physical examination.  She noted that Plaintiff did not present with any tenderness of the cervical spine in her

neck, and that her range of motion of the cervical spine was within normal limits. (*Id*. at 187.) Dr. Matta further noted that Plaintiff walked steadily without support, was able to walk on her heels, tiptoes, and do tandem walking. (*Id.*) The report shows that Plaintiff was able to squat seventy-five percent down. (*Id.*) The report also shows that Plaintiff did have some curvature in her back, but that she did not have any tenderness in her thoracic spine, although she did have some tenderness in her lumbosacral spine. (*Id.*) Dr. Matta noted that Plaintiff's had a positive straight leg raising test. (*Id.*) Dr. Matta's impression was that Plaintiff had chronic back pain that worsened when Plaintiff stood or sat for more than twenty minutes and lifted more than thirty to forty pounds. (*Id.*)

In August and September, 2006 and February, 2007 Dr. Adel A. El-Magrabi, M.D., evaluated Plaintiff. (AR at 205-07.) In the initial evaluation, Dr. El-Magrabi stated that Plaintiff was able to attend to her daily routine, including driving and shopping. (*Id.* at 207.) The report shows that Plaintiff had no difficulty performing weight bearing activities, including standing and walking on tiptoes and heels. (*Id.*) Dr. El-Magrabi stated that Plaintiff had been experiencing episodic pain in her lower back. (*Id.* at 205.) The report indicates that Plaintiff had periods of stiffness in her back and some spasms in her thighs. The report notes that Plaintiff's pain was aggravated by "prolonged weight bearing." (*Id.*) Dr. El-Magrabi noted that rest, changing position, heat, and medication (Vicodin, Motrin) helped to temporarily decrease Plaintiff's symptoms. (*Id.*) The report also indicates that Plaintiff reported no numbness in her leg. (*Id.*) Dr. El-Magrabi formed the impression that Plaintiff had lumbosacral radiculopathy, lumbar spinal stenosis, chronic pain, sacrolilitis, and lumbar disc disease. Dr. El-Magrabi planned to treat Plaintiff with epidural steroid blocks and an exercise program. (*Id.*)

Plaintiff saw Dr. Setti Rengachary, M.D., at various time from 2005 to 2007. (AR 218-33.) At Plaintiff's initial exam, Dr. Rengachary noted that Plaintiff had probable degenerative disc disease. (*Id.* at 233.) Dr. Rengachary's remaining notes echo this first impression. In October, 2005 Plaintiff reported that ibuprofen helped her pain. (*Id.* at 221.) But in 2007, Dr. Rengachary noted that Plaintiff stated that her daily activities of normal living are difficult and that she is unable to maintain a job. (*Id.* at 218.) But Dr. Rengachary also noted that Plaintiff received partial relief from epidural steroid injections, and noted that she would recommend physical therapy. (*Id.*)

On July 26, 2007 Dr. Hazem A. Eltahawy, M.D., examined Plaintiff. (AR at 212.) He reviewed the MRI of Plaintiff's lumbar spine. He noted that Plaintiff continued to complain of lower back pain and occasional migraines. (*Id.*) He stated that he discussed surgery as an option with Plaintiff. (*Id.*) He wrote that Plaintiff was reluctant to proceed with surgery. (*Id.*) So Dr. Eltahawy prescribed a brace for Plaintiff. (*Id.*)

On August, 14 2007 Dr. Eltahawy examined Plaintiff for her low pack pain and migraines. (*Id.*) He stated that Plaintiff had lumbar scoliosis and that Plaintiff wanted to "continue conservative treatment." (*Id.*) He further stated that he wrote prescriptions for physical therapy, and several medications. (*Id.*)

In June and July, 2005, Plaintiff attended physical therapy at the Rehabilitation Institute of Michigan. (AR at 295-96.) The June report shows that Plaintiff was severely limited in squatting and bending, but that she was only moderately limited in her prolonged sitting and standing (twenty-five minutes) and her overhead/reaching activities. (*Id.* at 296.) The July report mirrors the June report. (*Id.* at 295.)

In September, 2007 Plaintiff attended physical therapy at the Rehabilitation Institute of

4

Michigan. (AR at 283-94.) These records show Plaintiff had initial functional limitations that were of a "severe difficultly" but that her interim function improved, and ranged from "mild difficultly/impairment" to "moderate difficulty/impairment" in prolonged sitting, prolonged standing, work performance/potential, range of motion, strength, lifting and carrying, child care, housework, and meal preparation. (*Id*. at 294.)

On June 11, 2008 Plaintiff had another physical therapy evaluation. (AR at 297.) The evaluation suggested that Plaintiff had an RFC below the sedentary level. (*Id.*) Despite that statement, the recommendation stated that Plaintiff could sit up for fifty minutes at a time, stand for up to ten minutes at a time, could sit/stand as needed, walk up to five thousand feet at any given time on an occasional basis, squat, lift various amounts of weight, and had unlimited fine motor skills. The recommendation included some limitations. (*Id*. at 298.) The recommendation further suggested only physical therapy. (*Id.* at 298-99.)

On July 30, 2008 Dr. Mohammed Othman, M.D., submitted a statement in favor of Plaintiff's disability. (AR at 317.) He stated that "based on review of the . . . evaluation performed by Rehabilitation Institute of Michigan dated June 11, 2008, as well as a review of [Plaintiff's] medical records and [his] impressions from her physical examinations, it [was his] opinion to a reasonable degree of medical certainty that [Plaintiff] [was] completely unreliable [sic] to perform any work due to several factors." (*Id.*) He stated that Plaintiff would need to miss work frequently due to exacerbations of pain. (*Id.*) He summarized her impairments and stated that she was "extremely limited in normal activities of daily living," citing her June 11, 2008 RFC evaluation from Rehabilitation Institute of Michigan. (*Id.* at 318.) He further stated that the treatments that Plaintiff had received had not alleviated her pain (medications, TENS unit, physical therapy, and

5

injections). (*Id.*)

### 3. Plaintiff's testimony at the hearing

At her hearing, Plaintiff focused her testimony on her back pain. She first stated that she was unable to drive, because of her pain, which had increased since 2007. (AR at 41.) She explained that she could not drive because she needed to change positions a lot, and that she could not change her position while wearing a seatbelt. (*Id.*)

The ALJ asked Plaintiff to state why she believed she was disabled. (AR at 45.) She stated because she had scoliosis. (*Id.*) She discussed a lot of the 'process' that she went to, bouncing from doctor to doctor. (*Id.* at 46.) She then stated that her pain had become worse and intolerable. (*Id.*) She added that she had had no improvement in her back pain, and that, to the contrary, her pain had increased. (*Id.* at 47.) She stated that a doctor suggested surgery, but she added that she did not want to go through the surgery. (*Id.* at 48.)

She discussed her current medications. (AR at 48.) She stated that she took medications, and that they took the edge off of her pain, but that they "put[ her] to sleep. (*Id.*)

The ALJ then asked her to describe her pain. She stated that her pain was below her waist, and that she experienced sharp pains shooting up the spine into the middle of her back. (AR at 50-51.) She added that she had hip pain. (*Id.* at 51.) She explained that her pain went all the way up to her neck and down through her legs. (*Id.* at 52.) She then stated that she had pain throughout her neck, shoulders, and legs, at times. (*Id.* at 53.)

Plaintiff informed the ALJ that her back pain kept her awake at night, and that she had difficultly finding a restful position. (AR at 57.)

Plaintiff stated that she could stand on her feet for ten to fifteen minutes before she needed

to sit down; and she stated that she was also only able to sit for ten to fifteen minutes before she needed to stand up. (AR at 59.) She further stated that she could not bend or squat. (*Id*. at 59-60.) She explained that she could not squat because she was afraid that she would not be able to get up. (*Id.*) She also stated that she could "probably" lift or carry five pounds, maybe ten pounds. (*Id.* at 61.) But she stated that could not carry that amount six or seven times in an eight-hour day, because of her pain. (*Id*. at 61-62.)

She also stated that, between eight in the morning and five in the afternoon, she would need to lie down for several hours. (AR at 62.)

The ALJ then questioned the vocational expert. (AR at 74.) The ALJ posed a rather long hypothetical to the vocational expert. (*Id*. at 76-77.) Given the hypothetical, the vocational expert stated that jobs existed in the metro-Detroit economy that Plaintiff could perform. (*Id*. at 78-79.)

### 4. The ALJ's opinion

The ALJ addressed Plaintiff's alleged mental impairment allegations.[2] (AR at 21.) He found that Plaintiff's depression did not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities. (*Id.*) He therefore directed a nonsevere finding. (*Id.*) To come to this conclusion, the ALJ noted that Plaintiff was diagnosed with a single episode of major depressive disorder, and a Global Assessment of Functioning score of 53. (*Id*. at 21.) But the ALJ then noted that Plaintiff's condition improved "substantially" with medication and treatment. (*Id.*)

---

[2] Plaintiff did not respond to Defendant's substantial evidence argument in its motion for summary judgment. Nor did Plaintiff, in her own motion, address her alleged mental impairment. The Court has reviewed the mental impairment argument and has found that substantial evidence does support Defendant denying Plaintiff's benefits request. The Court briefly presents the ALJ's discussion of Plaintiff's alleged mental impairment.

He stated that the records showed that she had a brighter affect, was less anxious, well-groomed, and oriented. (*Id*. at 21-22.) The ALJ also found that there was no evidence of ongoing symptoms of depression that interfered with her work activity. (*Id.* at 22.) The ALJ then stated that, at the hearing, he observed that Plaintiff had satisfactory concentration, good memory, and an excellent appearance. (*Id.*) And he stated that Plaintiff explained that her disability was due to her alleged pain and not because of her mental limitations. (*Id.*) The ALJ therefore held that Plaintiff had only mild limitations with activities of daily living, social functioning, and concentration, persistence or pace. (*Id.*) And he found that Plaintiff had no episodes of decompensation that have been of extended duration. (*Id.*) The ALJ then directed a nonsevere finding. (*Id.*) (citing 20 C.F.R. § 404.1520a(d)(1).)

The ALJ then addressed Plaintiff's physical impairments, primarily those relating to her back pain. The ALJ reviewed Dr. Othman's opinion. (AR at 24.) The ALJ acknowledged that Dr. Othman concluded that Plaintiff had been disabled and unable to work since October, 2003 because of "secondary to chronic, severe and intractable pain in the neck, back, hip, and legs." (*Id.*)

The ALJ then stated that, after a review of the medical evidence, Plaintiff did not "have pain of a severity to preclude her from nonexertional work, such as the limited range of sedentary work described at the hearing." (AR at 24.)

The ALJ noted that Plaintiff had two MRIs–one, of her lumbar spine, showed facet hypertrophic arthropathy and hypertropy with mild narrowing at L4-L5; the other showed small central spur/disc complex at C4-C5. (AR at 24.) The ALJ stated that the "subsequent clinical findings fail to show a back or neck impairment likely to produce disabling pain." (*Id.*)

The ALJ discussed Dr. Matta's July 2006 evaluation. (AR at 24.) The ALJ stated that Dr.

Matta found that Plaintiff was alert and oriented, walked with a steady gait without support, had a full range of motion of the lumbar spine, and that she was able to walk on heels and toes, despite some tenderness in the lumbar spine. (*Id.*) The ALJ also pointed out that Dr. Matta noted at the time of the evaluation, that Plaintiff complained of back pain with standing or sitting over thirty minutes and with lifting over thirty to forty pounds. (*Id.*) The ALJ commented that the findings would not interfere with Plaintiff's "ability to perform the sedentary jobs cited by the vocational expert at the hearing." (*Id.*) The ALJ noted that the hearing testimony allowed for a sit/stand option and limited Plaintiff to lifting ten pounds.

The ALJ then pointed out that consultative examiner, Dr. El-Magrabi, found in August, 2006 that Plaintiff had intact sensory functioning and functional muscle strength. (*Id.*)

And the ALJ drew attention to Plaintiff's March, 2008 exam at the Detroit Medical Center that showed that Plaintiff was alert and oriented, had good muscle power in her lower extremities, negative straight leg raising, and intact pulsation in the extremities. (AR at 24-25.)

The ALJ then discussed why he did not find Dr. Othman's report credible. He stated that Dr. Othman conclusion in a July, 2008 report that Plaintiff was unable to work because of back pain and drowsiness due to her medications. (AR at 25.) But the ALJ added that Dr. Othman's conclusion was unreliable "in view of the lack of supporting documentation for a disabling back condition." (*Id.*) The ALJ pointed out that Dr. Othman stated that Plaintiff suffered "severe scoliosis," although the updated MRI only shows a "moderate degree of scoliosis." (*Id.*) The ALJ further pointed out that Plaintiff reported that her back pain was "better with physical therapy" in September, 2007, and that she also had less head pain as a result. (*Id.*) The ALJ recognized that a July, 2007 physical therapy report indicated that Plaintiff's pain worsened with prolonged walking,

9

standing, or sitting. (*Id.*) But the ALJ stated that that limitation "would not preclude her from the sedentary work providing for a sit/stand option." (*Id.*)

The ALJ quickly reviewed Plaintiff's allegations of migraines; the ALJ dismissed them–stating that there was no evidence in the record that show that the migraines were "of a frequency or severity to interfere with work activity." (AR at 25.) And the ALJ stated that there was no evidence that Plaintiff could not control her asthma with medication. (*Id.*)

The ALJ then quickly reviewed how the records failed to show that Plaintiff needed strong medication on a consistent basis. (AR at 25.)

The ALJ determined that Plaintiff had a RFC to perform sedentary work with the following limitations: sit/stand option; precluded from repetitive stooping, squatting, or kneeling or bending from the wait to floor level; cannot engage in any prolonged walking, repetitive climbing of stairs or ladders, or twisting or torquing the torso to extremes of motion; and avoidance of significant concentrations of atmospheric irritants. (AR at 22.) Given the RFC, and the vocational expert's testimony, the ALJ directed a finding of "not disabled." (*Id*. at 26.)

### 5. Plaintiff's husband's statement

Plaintiff's husband, Antwan Porter, submitted a statement. (AR at 154.) Mr. Porter summarized that Plaintiff suffered from broth physical and emotional conditions. (*Id.*) He stated when Plaintiff's problems began, and how her pain affected her ability to work. (*Id.*) He stated that she could not sit for more than thirty to forty-five minutes at a time, and that she had to change her positions constantly. (*Id.*) He added that Plaintiff could not walk for more than five to ten minutes and that she could not stand for more than ten. (*Id.*) If she had to go beyond these times in any of her activities, Mr. Porter stated that Plaintiff began crying. (*Id.*)

Mr. Porter reported that Plaintiff suffered from scoliosis, back problems, migraines, major depression, gastro-reflux disease, insomnia, and chronic pain. (AR at 154.) The pain, Mr. Porter stated, was debilitating to Plaintiff– it consumed and knocked her out. (*Id.* at 155.) He stated that Plaintiff often could not get out of bed, walk down stairs, play with her children, or go for a walk–all because of her pain. (*Id.*) He also stated that Plaintiff took medications, but that these medications made Plaintiff drowsy, and that she needed help standing up and staying up when she was on these medications. (*Id.*)

As to her daily activities, Mr. Porter stated that his wife's activities are "very basic and simple." (AR at 155.) He stated that she gets up in pain, takes quick showers, and that it took her a long time to do anything simple, such as washing, brushing her teeth, or getting dressed. (*Id.*) He further stated that she moved very slowly due to her pain. (*Id.*) He added that Plaintiff could "fix" herself something small to eat. (*Id.*) He also added that Plaintiff needed assistance with getting undressed, fixing her hair, and that she was unable to perform any household duties. (*Id.* at 156, 157.)

Mr. Porter also discussed how Plaintiff had issues with her concentration and memory. (AR at 156.) And he discussed that Plaintiff had many postural limitations–that she was not able to reach, bend, balance, walk, sit, stand, lift, carry things, drive, stoop, crouch, squat, or kneel. (*Id.*)

### B.     Standard

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's

decision employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### 1. Framework For Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. she was not presently engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or

    4. she did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

    **C.**    **Analysis**

Plaintiff raises two issues that she argues requires remand. Plaintiff first argues that the ALJ failed to discuss a functional capacity evaluation that supported a treating physician's opinion that Plaintiff was disabled. (Pl.'s Mot. for Summ. J. at 1.) Plaintiff then argues that the ALJ committed a legal error when he did not discuss Plaintiff's husband's witness statement, in which he discussed her functional limitations in detail. (*Id.*)

Defendant counters Plaintiff's arguments and maintains that substantial evidence supports Defendant's decision.

The Court agrees with Defendant.

### 1. The ALJ did not err in addressing Dr. Othman's opinion

Plaintiff argues that the ALJ erred when he did not provide "good reasons for rejecting Dr. Othman's opinion." (Pl.'s Mot. for Summ. J. at 9.) Plaintiff adds that "the ALJ's analysis [of Dr. Othman's opinion] was based on a false premise, namely that there were no clinical findings or other medical evidence to corroborate that opinion." (*Id.*) Plaintiff specifically argues that the ALJ failed to discuss an underlying physical therapy report that Dr. Othman relied upon in suggesting that Plaintiff was disabled.

Defendant argues that a physical therapist is not an acceptable medical source and that the physical therapy evaluation did not corroborate or support Dr. Othman's opinion. (Def.'s Mot. for Summ. J. at 10.) Defendant maintains that the physical therapy opinion suggests that Plaintiff's limitations fell well within the ALJ's RFC. (*Id.*)

The Court agrees with Defendant–the ALJ appropriately addressed the medical evidence in the record and pointed out why he found Dr. Othman's opinion not entitled to controlling weight.

#### a. Treating source rule

The Commissioner has imposed "certain standards on the treatment of medical source evidence." *Cole v. Astrue*, –F.3d–, 09-4309, 2011 WL 5456617, at *4 (6th Cir. Sept. 22, 2011) (citing 20 C.F.R. § 404.1502). Under the treating source rule, the ALJ must "give a treating source's opinion controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). If the ALJ does not give controlling weight to the treating source's opinion, he "must then balance the following factors to determine what weight to give it:" "the length of the treatment relationship and the frequency of examination, the nature and

extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) and 20 C.F.R. § 404.1527(d)(2)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." *Id.* (citation omitted). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (citation omitted).

The Sixth Circuit has "made clear" that it will remand the Commissioner's determination if it has not provided good reasons for the weight it has given to a treating physician's opinion. *Id.* at *10 (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

If the ALJ fails to follow and agency rule or regulation, then the ALJ's failure "denotes a lack of substantial evidence, even where the [ALJ's conclusion] may be justified based upon the record." *Id.* at *3 (citation omitted).

But a failure to follow the treating source rule can be deemed "harmless" if the "treating source's opinion is so patently deficient that the Commissioner could not possibly credit it[.]" *Id.* (citation omitted). "An opinion may be patently deficient if the treating source offers no explanation to support it." *Fleming v. Comm'r of Soc. Sec.*, 10-25, 2011 WL 3049146 at *9 (E.D.Tenn. July 5, 2011) (citing *May v. Astrue*, 09-00090, 2009 WL 4716033 at *8 (S.D.Ohio Dec. 9, 2009) (finding treating source opinion patently deficient where treating source simply checked boxes about the plaintiff's alleged disability and failed to provide supporting explanations or objective evidence.").

      **b.**     **The ALJ gave good reason why he rejected Dr. Othman's opinion and the ALJ did not err when he did not address the physical**

15

### therapy evaluation

Plaintiff argues that remand is required because the ALJ failed to discuss the June 11, 2008 physical therapy evaluation, upon which Dr. Othman relied in concluding that Plaintiff was disabled. The Court disagrees that remand is required. The Court finds that, as Defendant points out, that the 2008 evaluation actually supports the ALJ's ultimate RFC and not Dr. Othman's disability conclusion.

The 2008 evaluation, as Defendant shows, found that Plaintiff could sit up for fifty minutes at a time, stand for up to ten minutes at a time, could sit/stand as needed, could walk up to five thousand feet at any given time on an occasional basis, and squat; the evaluation also showed that Plaintiff could lift various amounts of weight and had unlimited fine motor skills. The evaluation did show some limitations. (AR at 298.) The recommendation further suggested only physical therapy. (*Id.* at 298-99.) Although that recommendation stated that Plaintiff had an RFC below the sedentary level, the specific statements counter that ultimate conclusion.

The ALJ concluded that the Plaintiff had a RFC to perform sedentary work with the following limitations: sit/stand option; precluded from repetitive stooping, squatting, or kneeling or bending from the wait to floor level; cannot engage in any prolonged walking, repetitive climbing of stairs or ladders, or twisting or torquing the torso to extremes of motion; and avoidance of significant concentrations of atmospheric irritants. (AR at 22.)

The 2008 evaluation therefore falls well within the ALJ's restrictive RFC.

The ALJ's discussion of Dr. Othman's opinion, moreover, was proper; the ALJ thoroughly discussed why he rejected Dr. Othman's recommendation that Plaintiff was totally disabled. The ALJ noted that Plaintiff was only clinically diagnosed with moderate scoliosis, and that records

showed that Plaintiff's pain decreased with physical therapy. (AR at 25.) The ALJ also reviewed evidence that constitutes substantial evidence to reject Dr. Othman's opinion and deny Plaintiff her request for benefits.

### 2. Substantial evidence supports the decision to deny benefits

Substantial evidence supports the ALJ's decision. The Court has already presented the opinions that support the finding that Plaintiff can perform jobs within the limited RFC the ALJ crafted. Dr. Matta found that Plaintiff could walk without support, squat seventy-five percent the way down, and do heel/toe walking; she only limited Plaintiff to a twenty-minute sit/stand option and limited her lifting capabilities to thirty to forty pounds. (AR at 186-87.) Dr. El-Magrabi also found that Plaintiff had no problems performing weight bearing activities, and that, while Plaintiff did experience pain, rest, changing positions, heat, and medication temporarily relieved her pain. (*Id.* at 205-07.) And Plaintiff's visits to the Rehabilitation Institute of Michigan show that Plaintiff improved with physical therapy and only had mild to moderate difficultly in various aspects of her activities. (*Id.* at 283-99.)

The Court finds that this evidence is more than a scintilla of evidence that constitutes substantial evidence to support the ALJ's decision.

### 3. The ALJ's failure to address Plaintiff's husband's statement is not an error requiring remand

Plaintiff argues that remand is required because the ALJ did not discuss Plaintiff's husband's statement. Plaintiff is incorrect. Remand is not required when, as here, a spouse's lay testimony or statement would be merely cumulative evidence and the ALJ has otherwise considered the evidence that the spouse's statement presents. *See Higgs v. Bowen*, 880 F.2d 860, 864 (6th Cir. 1988) (finding that the Appeals Council's failure to discuss the plaintiff's husband's testimony was

not reversible error when the Council's opinion stated that it considered the entire record and the record indicated that it did "not credit any testimony at variance with the objective record.); *Alonso v. Comm'r of Soc. Sec.*, No. 10-634, 2011 WL 4526676, at *10 (W.D.Mich. Aug. 8, 2011) (Brenneman, Mag. J.) (adopted in full by 2011 WL 4502911 (W.D. Mich. Sept. 28, 2011) (stating, "[t]he ALJ's failure to explicitly refer to [the] plaintiff's husband's testimony is not an error requiring reversal."). *See also Spencer v. Astrue*, No. 08-71, 2008 WL 5214230, at * (W.D. Ky. Dec. 12, 2008) (holding that an ALJ's failure to address the plaintiff's husband's statements was not reversible error when "the husband's statement [was] simply cumulative evidence, including substantially the same information as the [plaintiff's] subjective complaints.").

Here, the Court finds that Plaintiff's husband's statement mirrors Plaintiff's testimony, which the ALJ considered. The Court therefore finds that this argument does not warrant remand.

### D. Conclusion

For the above-stated reasons, the Court recommends denying Plaintiff's motion for summary judgment, granting Defendant's motion for summary judgment, and dismissing this case.

## III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v.*

*Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: January 10, 2012     s/ Mona K. Majzoub
                            MONA K. MAJZOUB
                            UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 10, 2011     s/ Lisa C. Bartlett
                            Case Manager